The next case on the call is agenda number two, case number 127412, People of the State of Illinois v. Jermell Dossie, Ms. Suzanne Angela Isaacson. You may proceed. Please put the microphone down. Thank you. Good morning, Your Honors. May it please the Court, my name is Assistant Public Defender Suzanne Isaacson on behalf of Jermell Dossie. Two main issues are presented here. First, whether probable cause to support Jermell Dossie's warrantless arrest was shown at the suppression hearing. And secondly, whether the arrest was unconstitutional because it was made pursuant not to a warrant but merely a police-issued investigative alert. I'll begin with the question whether the arrest can be upheld when no warrant was obtained and Dossie was not arrested until more than a week after the offense and a week after the police knew who they were looking for. And there was no showing that it was unfeasible to obtain an arrest warrant during that time period. Instead, Dossie was arrested through the procedure of a Chicago Police Department investigative alert, which under the particular circumstances here was unconstitutional. So what are investigative alerts? They're requested by police officers when they want someone for questioning or when they believe that they have probable cause to arrest. They're entered into an internal database through a process outlined in the police department directives, and they're approved by a supervisor. As shown in the recent case of People v. Smith, they're widely used. There was testimony in Smith that arrest warrants are mainly reserved for cases of possible flight from the jurisdiction, and that's supported by the 2018 directive in its description of temporary wants for that purpose. After an alert is issued, any officer who learns of it can arrest the person named at any time, whereas here an officer can be sent out specifically to arrest the person. Investigative alert is really a misnomer when it's of the probable cause variety. Instead, they're essentially used just like arrest warrants or in place of arrest warrants when the person can't be arrested right away and for practical or operational reasons. There may be a need to delegate the arrest to officers unrelated to the investigation using a warrant-like mechanism. What they really are is de facto warrants or proxy warrants or police warrants because that's essentially how they're functioning. So what's wrong with them? Counsel, ultimately, isn't the issue whether or not there was probable cause for the arrest? I would submit that no. That's one of the points that are made to say that they're valid, essentially that the police have the unfettered discretion to arrest any citizen at any time when they believe that there's probable cause. So if arrest warrants are not required at all, that essentially renders investigative alerts to be red herrings, which is the asserted paradox mentioned in several of the appellate court cases. But the first answer is there's no paradox if investigative alerts are viewed as warrants, but noncompliant warrants lacking in constitutional safeguards. Arrests on noncompliant warrants are not permissible. Examples are Clark in 1917 striking down a statute allowing warrants to be issued on unsworn complaints instead of the affidavit required by the Illinois Constitution, or Littman and Elias striking down statutes allowing probable cause to be determined by someone other than the judge. Counsel, with respect to the investigative alerts, there are two types. Am I correct? One type says there's probable cause for arrest, and the other type just basically informs the officer to speak with the person or attempt to speak with the person or indicate that authorities want to speak with the person. In this instance, it was not labeled either time. Is that right? The record does not show how it was labeled. We know that an investigative alert was issued by the detective early on. When he was asked to define investigative alert, he started by giving the definition of the temporary one. Somebody was sent out from the fugitive unit to effect the arrest over a week later. It's tempting to assume that there was one labeled probable cause at that time. But the record doesn't show it. The document itself was not admitted into evidence. When asked about descriptions, they were described in the same way for both of the warrants. We know that people are arrested all the time without a warrant, as long as there's probable cause. Correct? Well, it does happen. The question is, should it happen? Should, in our state, warrantless arrests be allowed without limitation at the unfettered option of the police? And we do acknowledge that a number of cases do say that warrantless arrests can be made on probable cause, which we do not concede was shown here. We also acknowledge that Watson, in 1976, said that it would not invalidate an arrest warrant on probable cause, even without exigent circumstances. So are you asking us to find that we should not allow warrantless arrests? Not in all circumstances. In circumstances such as here, of course there are exigent circumstances. Of course, as recognized by the trial court, there are on-site arrests in the presence of the police officers. That's what many of the cases of this court involve that are cited in the briefs. Boozer and Hightower involved controlled buys. Peek involved everyone being in the same yard, the policeman and the offender. So any non-site arrest now is unconstitutional unless the police get a warrant? Any non-on-site arrests? No, there could be exigent. Well, no, without exigent circumstances. Every non-on-site arrest without exigent circumstances, you know, the police chasing someone or whatever, you know, is unconstitutional after the plethora of cases that you just cited that say the opposite to that? Well, first of all, there could be practical constraints. Obviously, hot pursuits, an emergency situation, certainly that could be the case. How do we draw the line? Here you say it's a week, so a week is too long, according to you. Is 24 hours too long, 48 hours? Where do we draw the line as far as when the police are required then to get a warrant for a non-on-view arrest? Well, the essence is reasonableness to uphold any arrest. In the Smith case, an upper time limit of 24 to 48 hours was suggested. Of course, if there are efforts made in a particular case to obtain a warrant and through no fault of the police they're somehow obstructed in their ability to do so, that could certainly be something taken into consideration. But are cases really limited to cases like Jermel Dossi's, a week goes by. In the Bass case, I believe it was three weeks went by. In the Smith case, several months went by. Certainly in those cases. You're not just talking about investigative alerts. I mean, there's an investigative alert in this case, Bass, and now Smith say those are no good. But you're talking about something broader than that. You're saying basically all investigative alerts should be out the window. But you're talking even broader than that now with any type of non-on-view arrest. First of all, should all investigative alerts be out the window? Perhaps if there's a showing that there would be a slower process in obtaining a warrant in that case and they're truly used in a bulletin-like function, but where they're used as an affirmative substitute for the warrant process, which is certainly preferred according to all authorities. It's unquestionably preferred when there's a system that's designed specifically for when a warrant would be used but for the presence of a warrant and or proxy for a warrant. They couldn't reasonably arrest someone like this because time has passed. But part of our system, of course, is that within 48 hours, a defendant arrested without a warrant is entitled to a constitutional Gerstein hearing, correct? They are entitled to a Gerstein hearing. A person arrested with a warrant is not entitled to that hearing, correct? No, but they've had what the trial court would have done here, a warrant application presented to the judge with a deliberative process, with the court asking for many questions, with the court asking for the criminal history, with the court asking whether there were any promises of leniency, with the court asking for relevant facts and circumstances. The State does take the position that a Gerstein hearing after a warrantless arrest can cure any harm from not getting judicial approval before the arrest, but we disagree with that because Gerstein itself recognizes that warrants are preferred when feasible. Gersteins are very preliminary and brief. There are no standards in Gerstein ensuring that those hearings are as thorough as a warrant application proceeding would be, certainly as the trial court would have held here. No requirement that witnesses or the officer be present or questioned. In contrast, courts have approved the interactive approach that the trial court here would have taken if presented with a warrant application. They're not a fair substitute before depriving a citizen of his liberty through the grave intrusion of a custodial arrest. Counsel, isn't that why it ultimately boils down to probable cause? I certainly wouldn't want to be arrested and then have some assurance that, oh, in 48 hours I'll be in front of a judge. I don't want to be arrested if I shouldn't be arrested. But ultimately, if there is not probable cause, then that would be honored and that would take care of the problem. I don't understand why it's not about probable cause. If they have probable cause in relation to this case as far as the investigative alert, what does it matter that there was an investigative alert? Okay. Well, one question. Okay. I see the point that if there was no probable cause, an investigative alert can't save it. If there was probable cause, why should an investigative alert undo that and make an issue, which that's how I would perceive that argument, would be that an investigative alert is really a red herring. But that brings us to the question of we do believe that under the Illinois Constitution it should be construed that a warrant is required. But isn't that what you're trying to suggest to the Court, that it would be better for a judicial officer as opposed to a police officer to make the decision about whether or not there's probable cause for the arrest? Yes, absolutely. And the preference for that has been recognized by numerous cases of the judicial officer being interposed between law enforcement and the citizen in a detached, neutral, and unbiased manner as opposed to law enforcement and the executive branch doing everything. Did I understand you correctly when you suggested that this is a custom and practice of the Chicago police to avoid going before a judge to get a warrant for arrest? I can't speak to motives, but I do quote the testimony in Smith where the officer testified that, I hope I'm characterizing correctly, we reserve warrants for when we're afraid that someone might flee the jurisdiction. And the 2018 directives give that impression when they talk about temporary wants as being until we can get a warrant in 48 hours. Can I make it clear in my mind whether or not you're making an as-applied challenge to this or a facial challenge to this apprehension? Well, certainly to the extent Dossi's arrest was without probable cause, that's applied to him. And strictly speaking, we're really looking at Dossi's circumstances of an extended time period when a warrant was eminently feasible. So, you know, we could leave for another day whether they didn't get a warrant when it was, you know, within two days and, you know, why they didn't get a warrant. But here, it certainly is applied in this case. Certainly. But in terms of... I'm suggesting leaving the facial challenge for another day. Okay. You recognize the paradox that was raised in the earlier appellate court cases. I just want to ask you a very pointed question. If we were to reverse this, this case, would this not have ramifications beyond investigative limits? To the point that we're asking the court to clarify that arrest warrants are required in certain circumstances even when there's probable cause, yes, going forward, yes. And... But that is indeed how the Illinois Constitution can be construed. The limited lockstep cases look at different texts in the Constitution. They look at, you know, other historical sources for providing insight into how, in fact, our Constitution was intended to be construed. And the decision in 1870 to make an affidavit requirement came as a deliberate effort to affirmatively depart from the Fourth Amendment, suggesting that warrants were preferred, that they were broadly contemplated traditionally in our state because if the police could freely dispense with warrants at will, on a practical level, the affidavit requirement would not be providing very much protection at all for the concern that the delegates back in 1870 were trying to address, that an oral oath instead of an affidavit is too loose a mode of protecting people's rights, that the basis of an arrest should be memorialized in a permanent record instead of being a secret in the breast of the magistrate. That reflects concerns about ensuring the integrity of arrests and our ability to look at them after the fact to see if they were properly effected. That would not be addressed if there was no... Did this Court and Caballos reject that argument that the Illinois Constitution provides greater protection than the Fourth Amendment and that we're in limited lockstep with that? Caballos said that lockstep would be followed, but not in all circumstances. It adopted the limited lockstep approach, where if there were differences in the text or historical articulations of our state's traditions and values, that there could be a departure. And we have that here both in the text and in the early cases where traditional expectations of warrants were required. Letman, Elias, and Clark, as mentioned, all struck down statutes allowing warrants that were not compliant. They wouldn't have been so concerned with strict requirements if warrants were freely dispensable and not at least expected. Clark also supports that back in 1917, arrest warrants were broadly contemplated when it says that an arrest warrant or capia, unless that was issued, the only other instance where an arrest was justifiable was committed in front of the officer, the person making the arrest. There was the McGurn case that said that arrests could not be made on standing orders issued by a police supervisor, which can be analogized to investigative alerts. The court did not inquire in any of these cases whether the arrest could be saved by probable cause for some past crime known to the supervisor, as it well could have, if that was the only relevant principle. The cases also historically articulated values. The potential for the abuse of executive authority is noted in Litman, that citizens have assurance against being deprived of their liberty on the caprice or malice of the state lest there be intolerable uses, as stated in Clark. Neither the practice of widespread arrests on probable cause alone, nor arrests on investigative alerts entirely internal to the police department, would address those concerns. And exigent circumstances has been recognized as an exception to the warrant requirement. That has been recognized in many sources, that it should be sought whenever practical. Gerstein itself, Terry v. Ohio in 1968, the North case, many of our cases. The state may, I guess I would call the articulation, and that Justice Marshall makes this point very well articulated in his dissent in Watson. First of all, both concurring Justice Powell and Justice Watson noticed that in 1976, Watson was actually the first case that squarely held what it held, even though certainly there are articulations, as there have been in Illinois, that a warrantless arrest can be made on probable cause. First of all, we know that that's not literally true because we have Payton, which holds that in order to arrest somebody in a house with probable cause, there still has to be exigent circumstances. But what Justice Marshall was observing seems to generally apply in Illinois. There are cases where people don't challenge the articulation, or there are cases in which there are exigent circumstances in fact, where the crime is proximate or with some recency or immediacy to the arrest. Or, you know, the statement is just articulated in a list of general principles, but the issue raised is, you know, well, was there probable cause? And it isn't challenged or squarely addressed, and certainly not within the context of the constitutional differences between our state and federal and traditions and values. The state may say that even if our arguments are accepted, the good faith exception should apply. Our position is first that it should be viewed as forfeited. While the state mentioned it in a response, it did not obtain a ruling, and an analogy may be drawn. Counsel, your time is up. Okay, thank you. Joshua Schneider, you may proceed. Thank you very much. May it please the Court, Counsel. I'm Assistant Attorney General Josh Schneider on behalf of the people of the state of Illinois. Defendant is asking this Court to adopt a new constitutional rule under Article I, Section 6. Defendant's argument is that when an officer makes an arrest in public supported by probable cause, that arrest is nonetheless unconstitutional unless it is also authorized by warrant. That is a sea change in the law in Illinois, and this Court should decline to make that change. Defendant's argument rests on the idea that when an officer has probable cause to arrest in public, if he received that probable cause through an investigative alert sent through a computer rather than the same information provided over a radio or by memo or by fax, that the means of communicating probable cause to the officer somehow renders the arrest unconstitutional because I believe the argument is that an investigative alert is an unconstitutional substitute for a warrant. But that's simply incorrect. Police don't need a warrant to arrest someone in public as long as they have probable cause to believe that that person has committed a crime. And so an investigative alert that communicates the department's collective knowledge of probable cause to an officer is not an unconstitutional evasion of the warrant requirement because there is no warrant requirement for an arrest affected in public. Now, this is very clear. The United States Supreme Court precedent under the Fourth Amendment is very clear that a public arrest supported by probable cause is constitutional. There is no warrant required. As counsel noted, in the United States v. Watson, the court explained this in rather great detail, explained that this was the rule at the time before the founding, citing English authorities when the Bill of Rights was adopted in 1791. This was the rule among the states either enshrined in the various state constitutions or enacted in state statutes, and that is still the rule. Now, to be sure, the courts have consistently recognized a strong judicial preference for warrants when feasible, but Watson expressly declined to transform that judicial preference into a constitutional rule. And the reason that it did so was because that is beyond the court's role when construing the Constitution. The court's role, as this court recognized in Caballas with respect to the Illinois Constitution, is to give effect to the framers' intent as reflected by the language that they used. And so although there may be thoughts that evolving policy would suggest that this is a better practice or that evolving technologies mean that perhaps now it would be easier to get a warrant in many circumstances, that is, frankly, irrelevant to the constitutional inquiry about whether a warrant is constitutionally required for arrests in public. Counsel, you just made reference to the Constitutional Convention, and I happen to notice that if Mr. Dvorak made the following statement, he was a delegate to the 1970 Constitution, and he said, in order for a governmental officer, a police officer, to obtain an arrest warrant, they have to go before a judicial officer to determine that there is probable cause for the seizure supported by affidavit. Then and only then is it legal. Now, that is a delegate to our 1970 Constitution. That's what he said. How do you reconcile this with what you're telling me? Sure. That's exactly true. In order to get a warrant, it has to be supported by an affidavit demonstrating probable cause. Otherwise, the warrant is not lawful. That is absolutely correct. But he's demonstrating the probable cause to a judge, correct? That's correct. That's who makes the probable cause determination. That's who makes the probable cause determination when a warrant is sought. Now, there's two questions. We know that this Court construes Article I, Section 6 in limited lockstep with the Fourth Amendment. The limits on that lockstep are these. Either the plain language is different, and so because the language of Article I, Section 6 is different from the language of the Fourth Amendment, the framers intended a different meaning, or there's a longstanding Illinois tradition reflected in longstanding Illinois precedents. But there is a textual difference. There is. There absolutely is. And the difference is in the warrant clause. So as this Court recognized in Cabalas and Tisler and I want to say Fitzgerald and a number of other cases, the unreasonable search and seizure clause of Article I, Section 6 is effectively identical to the unreasonable search and seizure clause of the Fourth Amendment with the exception that it applies additional protections against unreasonable invasions of privacy and intercepts of communications, which is not an issue. But it also says upon affidavit. Right. The second clause of Article I, Section 6 is the warrant clause, which is also virtually identical to the warrant clause of the Fourth Amendment. The difference, which Your Honor has identified, is that whereas under the Fourth Amendment, a warrant must be supported by oath or affirmation, under Article I, Section 6, it must be supported by affidavit. So what the Constitutional Convention did in 1869 was it substituted the term affidavit for oath or affirmation. So defendants' argument is that by substituting affidavit for oath or affirmation, it was not just changing the way that one must proceed to obtain a warrant, it was changing when must one obtain a warrant. In other words, rather than changing the procedure by which one obtains a warrant, it was dramatically expanding the scope of the warrant requirement. And that would be a surprise to the delegates in the 1869 Convention, because defendant and, I believe, amicus, both cite Delegate Vanderventer's statements in the 1869 Convention. But they quote them in part. And with your indulgence, I'll quote them at slightly greater length to explain why there's really no basis to believe that substitution of affidavit for oath or affirmation was intended to expand the scope of the warrant requirement. While you're doing that, there's also a right to privacy codified in the Illinois Constitution. What is the significance of that? Doesn't that provide greater protection to Illinois citizens? It does for violations of privacy. A public arrest, we would submit, does not implicate that right. And returning very briefly to Delegate Vanderventer's statements, when explaining why he was proposing a substitution of affidavit for oath or affirmation, he explained, quote, When a person applies to a justice of the peace for a warrant to invade the sanctity and privacy of a man's dwelling house, to go into his castle, to use the old legal language, he should make an affidavit for it. And that affidavit should state the facts and circumstances under which he predicates his claim to the warrant. Delegate Vanderventer then goes on to say that, quote, To permit a person to go before a justice of the peace, take an oath, and then send a constable into any man's private house and ransack private apartments is entirely too loose a mode of protecting the rights of persons. So Delegate Vanderventer, at least, understood that the reason that we need to provide greater protections by requiring a warrant-supported affidavit rather than oath-supported affidavit was because in the circumstances where a warrant is required, i.e., searches inside the home, an oath was insufficient to provide the necessary protections. Kennedy. Counsel, I cannot think of a greater invasion of privacy than an arrest. I would certainly say there is no greater invasion of personal liberty than an arrest under the Fourth Amendment or Article I, Section 6. But if one is in – I would suggest that if one is arrested in private, or in private, there is an invasion of privacy because the police had to enter an area they otherwise would not have access to. If one is arrested in public, there are all kinds of liberty interests involved, but privacy does not strike me as one of them because one is in public. One has no reasonable expectation of privacy in public. And so as long as this Court has held in Caballos and Tisler and a host of other cases, and as the U.S. Supreme Court has held in a host of cases, all that is required to arrest someone in public is probable cause to believe that they've committed a crime. Now, a warrant – Counsel, we would have to disavow the language in Caballos where we specifically said in 2006 that the phrase supported by affidavit in the State Constitution, the oath of affirmation in the Fourth Amendment, is virtually synonymous. And this Court repeatedly held that the two constitutions should be construed alike. That's exactly right. This Court would actually not only need to reverse Caballos and Tisler and the subsequent cases, it would also need to really set aside the last 150 years of Illinois precedent allowing arrests in public supported by probable cause. And this leads me to the second reason that the Court might depart from lockstep, which is if there's a longstanding Illinois tradition reflected in longstanding Illinois precedent. And there simply isn't one. If you look at the case law going back to Cahill in the late 19th century, there is a case law that states that a warrant supported by probable cause is unconstitutional if it is not further authorized by warrant. And the cases that defendant relies upon and that the appellate court relies upon and Smith and that Amicus relies upon simply do not hold to the contrary. Littman concerned the constitutionality of a statute that authorized private persons to seek warrants from magistrates, search warrants for other private persons' property. And those warrants would then be executed by law enforcement and could result in arrests. And what Littman said is the statute, I believe the statute allowed the affidavit or the warrant to be obtained on oath. And Littman said, no, any warrant in Illinois under Article I, Section 6, must be obtained pursuant to an affidavit. That's simply asking the question, how do you obtain a warrant, the procedural question, not when must you obtain a warrant. The statute explicitly. Let me ask you a question. If we were to determine that there was probable cause for this arrest and not necessarily strike down the investigative alert, do we even have to reach this issue about whether or not affidavit means something different than oath or affirmation? I mean, here there was no warrant, right? That's exactly right. And, no, the court would not need to reach whether the distinction between affidavit and oath or affirmation, how much that matters, because it's simply irrelevant here because there was no need for a warrant. And so whether a warrant had to be supported by an affidavit versus oath or affirmation or what that distinction would be is simply not present here. Counsel, explain something to me. The officer who actually made the arrest, he said he didn't observe the defendant, Mr. Dawsey, commit any crime. He was acting pursuant to the investigative alert. I think your opponent referred to it as a police warrant. Is that correct? So the characterization of it as a police warrant is not correct. It is correct that the officer who was dispatched to effect the arrest was doing so based on the department's collective knowledge of probable cause that was communicated to him through an investigative alert. But it was an investigative alert, correct? That's exactly right. That's exactly right. Not based on any information that he had. That's right. Okay. And it means that a type of warrant was involved when they effectuated the arrest, whatever you call it. No. So it's not a type of warrant because as this Court and the U.S. Supreme Court have recognized, whether an officer has probable cause turns on the collective knowledge of the law enforcement agency. So this actually is a good distinction for McGurn, which I believe my opponent cites. In McGurn, there is a police superior. I don't know the rank. We'll call him a captain for this. There's a police captain who issued a standing order to arrest the defendant. The officer sees that order, arrests the defendant. McGurn held that that arrest was unconstitutional because there was no probable cause supporting the standing order. The fact that the superior issued the standing order alone is insufficient if that standing order is not then supported by probable cause. And there was no record in McGurn that there was any reason for the standing order to have been issued. So McGurn had no trouble saying that the autocratic whim of a police superior that someone be snatched off the street for no reason is certainly not constitutional. What it did not say is that an order by one officer saying we have probable cause to arrest so-and-so for such-and-such crime does not authorize another officer to arrest that person for that crime. And, in fact, as this Court and the Supreme Court of the United States have both held, we look at the knowledge collectively held by the police department at the time to determine whether there was probable cause. That way, we don't require that the investigating detective be the one who physically affects the arrest or that he physically accompany the arresting officer. All they have to do is communicate that probable cause to the arresting officer. Now, they can do that by over the radio. They can do that in person if the shift commander at the beginning of roll call says officers, here is the list of 20 people that we have probable cause to arrest. So if you run into them during your shift, arrest them based on this probable cause. That's all constitutional. What difference does it make that the trial judge found that there was no probable cause for the arrest? So that ultimately is the question that determines the constitutionality of this arrest, because the investigative alert is irrelevant because there was no warrant required. It turns on, as Justice Holder-White recognized, this is just a question of was there probable cause. And the trial court was mistaken in holding that there was not probable cause. Of course, this reviews the ultimate probable cause determination de novo. And here, the evidence was perfectly sufficient to cause a reasonable person to believe that defendant had committed an aggravated battery with a firearm. The evidence was that police responded to a call of three shots fired. When they got there, they pulled surveillance footage. It showed a red Hyundai Santa Fe driving up and down the block and then turning into an alley. Seconds later, two young black men in dark hoodies came running out of the alley, one holding a gun, the other holding his hand to his side. They ran to the corner of the block where the shooting took place. As they rounded the corner, if you look at the video, you can see the man holding the gun raise his arm as they round the corner. They then run back down the block, turn back into the alley, and are gone. Now, there was footage in the alley which was not presented at the hearing, but that Officer Sanchez testified to. And he said that in that footage from the alley, it was possible to see the license plate number of that red Hyundai Santa Fe. They sent out a radio alert for that car. They located the car within a few hours. They asked the driver if he would speak to them. He agreed, and he told them that he had been called by two men. He identified them by their nicknames, Lil' Sean and Spaz. He said Lil' Sean called him to pick them up. He drove them to that location where he was shown on camera. They got out. He heard several gunshots. And then when they returned, Spaz was holding a gun. Lil' Sean was holding his hand to his side. The detective then went to a police database. Counsel, you just identified the two people who were doing things. Isn't it a fact that they couldn't identify the people in that video? That's true. From the video alone, they couldn't tell who they were. And isn't it a fact that we don't know who shot the decedent in this case? Well, I don't know that that's a fact. Certainly, a trial will have to determine it. But whether there's probable cause to believe that the defendant was one of the people who shot the victim is the question. But even Mr. Crosby said he didn't know what anybody did. No, that's true. What he said was, I took them to the location of the shooting. They left the car. I heard several gunshots. And then they returned holding a gun. Now, a reasonable person looking at the totality of these facts and circumstances could certainly conclude, and, again, the standard is not beyond a reasonable doubt or even more likely than not just would it allow them to conclude that this person to believe reasonably that this person committed the crime, a reasonable person could look at that and say, you know what? I think that the person who ran to the location where the shooting was, I heard gunshots, and then they ran back holding a gun, I think that person was the person who committed the shooting. That's perfectly reasonable. So you're saying a reasonable judge could not come to a different conclusion? His finding was against the manifest way to the evidence? No. His factual determinations, he simply credited all the testimony that was provided. His legal determination that that testimony did not supply probable cause was simply incorrect under de novo review, which is the standard that governs review of the ultimate probable cause determination. His factual determinations were all actually in favor of the State. He credited all of the officers' testimony that they were testifying truthfully and accurately as to what they observed. Counsel, may I ask you a question? You argued now that there was probable cause to determine that Mr. Dawsey had committed a murder and that that information was kept within the Chicago Police Department through their investigative alert system. Now, here it was about a week later that he was arrested. We've seen other cases where it's a much longer time. In terms of public safety, why not get a warrant? Why keep this within the Chicago Police Department? Rather, why not be more aggressive to take a murderer off the street if, in fact, it's true that these facts will bear out? Why not get a warrant? Is there some practicality here that we're missing that perhaps we're debating whether it's constitutionally required, but why just ignore that? So I have a short answer based on my knowledge and then a slightly longer answer based on some speculation. So the short answer is I don't know. I don't know why the police didn't get a warrant in this case. Certainly, as we've discussed, there's a strong judicial preference. Have you ever seen a warrant in the Chicago Police Department? Have I ever seen a warrant? Yeah. Arrest warrant? I am sure I have. I don't believe it's ever been an issue in one of my cases. That's sort of the part of the record that an appellate attorney often sort of skips over. So in your cases, you haven't seen an arrest warrant from the Chicago Police Department? No. I can't say whether I have because, again, my cases don't tend to focus on probable cause, so that, again, the first 20 pages of the record tend not to be relevant to the issues in the cases I've litigated. What I will say is I suspected that would be asked, well, why didn't they get a warrant? And so it's not in the record. It is on the Chicago Police's website. They issue an annual report listing all sort of the statistics for the year. And if you go back to 1999 and 2000, for some reason that was a biannual report. It's the only one. All the other ones are annual. And in 1999 and 2000, in each of those years, there was slightly over a quarter million arrests affected per year. That would be hundreds and hundreds a day if, in fact, every time the police had a probable cause to arrest someone, they needed to get a warrant. There may be circumstances where there would be exigent circumstances that excuse that requirement. There may be hundreds a day that don't. And the volume of labor that that would put on not only the Chicago Police Office, because, of course, this is just Chicago. This is not all of Cook County, which includes some extremely heavily populated suburbs. That's an enormous volume of work. And the one last point I would make is that applies equally to small communities because the increased volume is proportionately identical. If you're in a town that has three police officers, if they have to get an arrest warrant every time they make an arrest, that's proportionately an equally burdensome imposition on the department and the system. Thank you. Thank you, Mr. Schneider. Ms. Isaacson? Pull the microphone down again. Thank you. Briefly, our record does not show that small communities use investigative alerts as a matter of course. I've been unable to find any directives codified, like the Chicago Police Department, for any other jurisdiction. Perhaps there may be. But the very presence that they're codified in this directive and manual with so many steps, as though this is being taught that this is the proper thing to do. Just don't get a warrant. Here are all the steps that you do. That's a problem that intentionally avoids judges who are elected by the voters to perform functions such as issuing arrest warrants and perhaps would have expected to do so. They eliminate the judge, who's the neutral, unbiased assessor of probable cause interposed between law enforcement and the citizen. They bypass the judge's ability to judge credibility and ask questions in assessing probable cause, as the court would have done here. Yet they have replaced warrants in many cases. And we don't say every time there has to be a warrant. Many of the arrests are probably drug cases, and the drug cases are probably seen. I would venture to guess that that's a lot of the cases. As for the Cabales case, that involved a canine sniff during a traffic stop, and this court decided to be consistent with the federal interpretation of the Fourth Amendment. But there was nothing raised in that case about textual differences relevant to the canine sniff or the affidavit requirement as being significant as offering insights on canine sniffs. Your position does not place a demarcation line one way or the other. It's a gradual stepping thing looking at the facts, correct? A demarcation line of when a warrant would be required in terms of time after the offense? Well, it's hard to do so, and here's one example why. This arrest warrant was not obtained. It was a full week after the arrest, but it was also a full week after the offense or the shooting, but also a full week after they knew who they were looking for in terms of Mr. Dassey. There might be other cases, you know, a week after the offense, but they don't know who the offender is until two days before. You know, there could be different circumstances, so strictly I'm limited to here. They certainly had a whole week where they knew who they were looking for. They went to the courthouse. They brought the witness to the grand jury room. You know, the police brought him there right in the courthouse where there are, you know, many judges. Counsel, does it make a difference that it was a public arrest? Well, certainly it would automatically be stricken under Payton if it was not. The question would already be answered. So the fact that it was a public arrest means that there's an open question before this court, whereas if there was an arrest inside the house, it would be unlawful under Payton. Does it make a difference that he was arrested in a car? Because he wasn't on the street. You know, that's a good point. They saw him leave a building, be on the street, and get into a car. Frankly, that's a good point that I haven't considered. And the trial court I don't believe considered. But it's a good point. We don't know whose car it was, and I don't know if there is a record for it. That could be a consideration for a remand for fact-finding, if relevant to the court. Do you know why it is that the investigative alert wasn't made part of the record? No. I would submit that it was the state's burden to do so, if deemed important, because under turnage it's the state that bears the burden of proving the good faith exception, and it's the state that bears the burden of going forward with the evidence to justify the arrest. There was descriptions of it. He was involved in an aggravated battery. That's all it said. I don't know if the investigative alert would have said any more. The officer said that's all he knew. It said that he was involved in an aggravated battery. Turning to the probable cause issue, since the police did not get an arrest warrant, that placed on the state the burden of going forward with sufficient evidence at a suppression hearing in court to justify the arrest. The government then assumed the risk that its factual presentation might not convince the court that the arrest was justified, and that's what happened here. The court assessed the information presented through the same standards that it would have used in issuing a warrant, found that the evidence put forth by the state was insufficient to show that an officer of reasonable question would have arrested Dassey. We've mentioned earlier the concerns, silence in the record on the criminal history and whether there are promises of leniency, anything else that could shed light on motivation by the witness to curry favor. He was taken in for questioning. He was potentially an accomplice, which calls for heightened question and corroboration, yet he admitted, unlike in the James case, to nothing against penal interest, admitted to nothing implicating himself. Unlike in the James case, he didn't say that he saw a crime. Unlike in the James case, we don't know that he felt that he had something to gain by identifying people pulled from a database. In the James case, the court said it was obvious that he knew he wasn't going anywhere. He was further along in the process of being accused. You know, his shoes were already being taken for investigation. He was already scheduled for a polygraph. This court would have asked about, the trial court would have asked about all those matters if presented with a warrant application and expected to hear more. But much like how a Gerstein hearing doesn't save, is not an adequate substitute, because of the inability of the court there to do what the court would do in a warrant application. The failure to get a warrant was a problem. The deficiencies in showing reliability were not cured by corroboration, because, as the court noted, the video was of such poor quality that Officer Sanchez, who was familiar with Doss, he couldn't even recognize him. It's inconsistent with public trust and confidence to completely relegate when it's feasible to do so, as opposed to the exception to dispense with the judicial warrant, as I believe has been historically contemplated in the earlier cases. And as for collective action, I mean, we're imputing probable cause. There's a continuum. I think the State cites Peek. That's truly officers working together. They're all in the same yard while the offense is ongoing. Different officers see different bits of it. And here you have the opposite, an extreme, an arrest by an officer with no knowledge whose only duty is to arrest. That's the entire job description. So that's an instance where there should be a warrant that that officer is sent out on to effect the arrest. Consistent with public trust and confidence, as well as our traditional values against abuses of executive authority, as articulated through many cases throughout our history. Thank you. Thank you. Case number 1412, People of the State of Illinois v. Jemele Dawsey, will be taken under advisement as agenda number two. Thank you very much, Ms. Isaacson and Mr. Schneider, for your arguments this morning.